IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ARTURO RIVERA GONZÁLEZ,

    Claimant,

        v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

CIVIL NO.: 14-1669 (MEL)

**OPINION AND ORDER**

### I. PROCEDURAL AND FACTUAL BACKGROUND

Arturo Rivera González ("claimant" or "plaintiff") was born May 21, 1974, and has a high school education. (Tr. 188, 219.) On April 27, 2011, he applied for Social Security disability insurance benefits ("DIB"), alleging disability on the basis of a back condition, a leg condition, and scoliosis. (Tr. 188, 218.) In his application for DIB, claimant alleged that he had been disabled since April 5, 2008. (Tr. 188.) The date last insured was December 31, 2013. (Tr. 15.) Prior to his initial application for DIB, claimant worked as a machine operator and electrical assembler. (Tr. 34.) Claimant's application was denied initially on October 21, 2011, and again upon reconsideration on January April 20, 2012. (Tr. 13.) On May 21, 2012, he filed a disability report adding depression to his allegedly disabling conditions.[1] (Tr. 80.) The Administrative Law Judge ("ALJ") held a hearing on April 4, 2013. (Tr. 27.) Claimant was represented by counsel and testified at the hearing; a vocational expert ("VE") testified by telephone. (Tr. 30.) On June 24, 2013, the ALJ rendered a decision, finding that claimant was not disabled from April 5, 2008 through the date of the decision. (Tr. 22–23.) The Appeals Council

---

[1] Although claimant notes his mental health concerns in his motion, he does not object to the findings with respect to the same.

denied claimant's request for review on July 14, 2014. (Tr. 1.) Therefore, the ALJ's opinion became the final decision of the Commissioner of Social Security (the "Commissioner" or "defendant"). Id.

On September 4, 2014, claimant filed a complaint seeking review of the ALJ's decision pursuant to 42 U.S.C. § 405(g). ECF No. 2. Defendant answered and filed a certified transcript of the administrative record. ECF No. 27. Both claimant and the Commissioner have filed supporting memoranda of law. ECF Nos. 32; 33.

## II.  STANDARD OF REVIEW

The Social Security Act (the "Act") provides that "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the] conclusion." Irlanda-Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991). The Commissioner's decision must be upheld if the court determines that substantial evidence supports the ALJ's findings, even if a different conclusion would have been reached by reviewing the evidence *de novo*. Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981). The Commissioner's fact findings are not conclusive, however, "when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam).

An individual is disabled under the Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). If the ALJ concludes that the claimant's impairment or combination of impairments do prevent him from performing past relevant work, the analysis then proceeds to step five. At this final step, the ALJ evaluates whether the claimant's residual functional

capacity ("RFC"),[2] combined with his age, education, and work experience, allows him to perform any other work that is available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the ALJ determines that there is work in the national economy that the claimant can perform, then disability benefits are denied. 20 C.F.R. § 404.1520(g). Under steps one through four, the claimant has the burden to prove that he cannot return to his former job because of his impairment or combination of impairments. Ortiz v. Sec'y of Health & Human Servs., 890 F.2d 520, 524 (1st Cir. 1989) (per curiam). Once he has carried that burden, the Commissioner then has the burden under step five "to prove the existence of other jobs in the national economy that the claimant can perform." Id.

### III. SUMMARY OF MEDICAL EVIDENCE

Plaintiff's medical records prior to the alleged onset of disability indicate he had a preexisting leg length discrepancy with his right leg shorter than his left. (Tr. 104–07.) During an evaluation by a consultant, Orthopedic Surgeon Benigno López López ("Dr. López"), on October 3, 2011, claimant complained of radiating neck pain that increased on turning, low back pain, and an inability to lift things from the floor or walk for "too long." (Tr. 110.) Dr. López confirmed claimant's leg discrepancy of approximately seven inches and a severe limp. (Id.) He noted claimant had no neurological deficit or swelling of the lower extremities. Both claimant's upper and lower extremities exhibited normal muscle strength. (Tr. 111–12.) Dr. López diagnosed claimant with right hip ankylosis, post septic arthritis, post-surgery left knee contracture, and shortening of the right lower extremity resulting in lumbar muscle spasm. (Tr. 112.) He opined that the leg length discrepancy was permanent, but the ankylosis "could improve a little with a total hip replacement." (Id.) He further concluded that claimant "could perform tasks while siting" and was a "candidate for vocational rehabilitation for the recommended tasks." (Id.)

---

[2] An individual's RFC is the most that he can do in a work setting despite the limitations imposed by his mental and physical impairments. 20 C.F.R. § 404.1545(a)(1).

Claimant saw Neurologist Reinaldo J. Carreras ("Dr. Carreras") on May 24, 2012. The majority of the documents from this visit are illegible. (Tr. 119–124.) The ALJ found that Dr. Carreras prescribed Relafen and Neurontin, and that despite the alleged side effects, claimant continued to have difficulties sleeping. (Tr. 19.) According to the ALJ, Dr. Carreras also referred claimant for physical therapy. (Id.) Claimant did not object to these findings and, in fact, adopted them in his motion. ECF No. 32, at 4. Dr. Carreras also referred claimant to a radiologist. (Tr. 120–21.)

Claimant testified that he visited his primary care physician, Dr. Pedro Ángel Berríos Antuña ("Dr. Berríos"), every month. (Tr. 33.) On August 14, 2012, Dr. Berríos completed a general medical report indicating that he first saw claimant on November 9, 2011. (Tr. 307, 311.) Based on this first examination, Dr. Berríos stated that claimant had a history of strong hip and lower extremities pain with difficulty walking long distances and standing or sitting for a long time. (Tr. 307.) On August 1, 2012, he prescribed claimant Tramadol, Relafen, and Flexeril. (Tr. 126.) Dr. Berríos described claimant's symptoms as of August 2012 as strong lower back pain and hip pain with radiation to lower extremities, which worsen with exercise. (Tr. 307.) The neurologic examination listed claimant's motor system as limited by hip deformity, and described lower extremity hyporeflexia. (Tr. 309.) Dr. Berríos also indicated claimant was limited in walking, sitting or standing and experienced hip pain upon palpitation and exercise. (Id.) He diagnosed claimant with a hip deformity since birth and radiculopathy, and he listed the prognosis as poor. (Tr. 310.) He went on to state, "patient totally disabled [sic] to do any kind of work due to hip deformity since birth. Patient with limitations with lifting, carrying, handling objects. Also limitation sitting, standing or walking long distances." (Tr. 311.) Dr. Berríos also completed a Medical Source Statement of Ability to do Work-Related Activities on August 14, 2012. (Tr. 312–15.)

He selected the following limitations: frequently lift and/or carry less than ten pounds;[3] standing and/or walking less than two hours in an eight-hour workday; sitting less than six hours in an eight-hour workday; and pushing and/or pulling limited in upper and lower extremities. Despite being given a space to explain these findings, the only elaboration Dr. Berríos provided was, "Patient with hip deformation since birth which limits this [sic] activities." (Tr. 312–13.) This was the same description given for why Dr. Berríos believed that claimant could never climb, balance, crouch, crawl, or stoop, but could occasionally kneel. (Tr. 313.) Again, this same description was provided for Dr. Berríos's finding that claimant was constantly limited in reaching, handling, and feeling. (Tr. 314.)

Lastly, on August 14, 2014, Dr. Bogart Esparza Razo ("Dr. Esparza") at the Ponce School of Medicine Coamo Behavioral Health Center prescribed claimant Prozac and Restoril. (Tr. 125.)

IV.   ANALYSIS

Claimant alleges, first, that the ALJ failed to properly evaluate his subjective complaints of pain, and, second, that the ALJ erred in his RFC finding.

    A.   Evaluation of Subjective Complaints of Pain

When a claimant alleges disability due to pain, the ALJ must follow a two-step analysis. Doyle v. Colvin, 80 F.Supp.3d 304, 314 (D. Mass. 2015). The claimant must first establish that there is a medically determinable impairment, reasonably expected to produce the alleged pain. Id.; Carbone v. Sullivan, 960 F.2d 143 (1st Cir. 1992) (table decision). If claimant meets this burden, the ALJ cannot then disregard claimants' allegations of pain merely because the severity is not corroborated by objective medical findings. Carbone, 960 F.2d at 143. The ALJ must instead address the following considerations, known as the Avery factors:  (1) claimant's daily activities; (2) location, duration,

---

[3] Dr. Berríos also selected that claimant could occasionally lift and/or carry less than ten pounds. (Tr. 312.) This inconsistency is never explained. Frequently is defined as one-third to two-thirds of an eight-hour workday, and occasionally is defined as "from very little up to one-third" an eight-hour workday. (Id.) Therefore, it is understood that an individual who can frequently lift and/or carry less than ten pounds can also do so occasionally.

5

frequency and intensity; (3) factors that precipitate or aggravate symptoms; (4) type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; (5) treatment, other than medication, taken to relieve the symptoms; (6) any measures other than treatment that the individual uses or has used to relieve the symptoms (e.g., lying flat on his back); and (7) any other factors concerning functional limitations and restrictions due to the symptoms. See id. (citing Avery v. Secretary of Health and Human Services, 797 F.2d 19 (1st Cir. 1986)); Doyle, 80 F.Supp.3d at 314.

Although the ALJ did not mechanically enumerate each factor, his opinion and the transcript of the hearing show a full consideration of the factors. See, e.g., Mercado v. Comm'r of Soc. Sec., 767 F. Supp. 2d 278, 285 (D.P.R. 2010) ("a failure to address all of the *Avery* factors in the rationale of the final decision is cured if the factors are discussed or considered at the administrative hearing"); Resendes v. Astrue, 780 F. Supp. 2d 125, 142 n.16 (D. Mass. 2011). The ALJ discussed in his opinion claimant's daily activities as reported in the Adult Function Report, including claimant's inability to do household chores or sit watching television for a long time due to pain. At the hearing, the ALJ questioned claimant on what he did during a typical day and asked whether he goes to the supermarket or shopping. (Tr. 32.) Claimant's attorney asked whether he spends time with his family, engages in social activities at parties, has pastimes, or takes care of animals or children. (Tr. 38.) Multiple times in the opinion the ALJ addresses the second factor by noting claimant's alleged daily pain in his back and hip. (Tr. 18–20.) This too was further developed at the hearing when the ALJ asked the claimant about the location and frequency of the pain, and claimant's attorney asked about the intensity. (Tr. 31, 37.) With respect to the third factor, the ALJ never used the words "precipitate" or "aggravate," but nonetheless he adequately addressed these concerns. He noted, for example, that plaintiff reported having to leave work early due to pain when his job duties changed so that lifting was required. (Tr. 19.)

Similarly the ALJ remarked that claimant could not watch television because he experienced pain from sitting. (Tr. 17.)

The ALJ also addressed the treatments that claimant received pursuant to factors four and five. The ALJ mentioned claimant takes acetaminophen, Dr. Carreras prescribed Relafen and Neurontin, and Dr. Berríos prescribed Tramadol, Relafen, and Flexeril, which in turn caused somnolence. (Tr. 19.) Despite this side effect, as the ALJ mentioned, claimant allegedly continued to have difficulty sleeping. (Id.) The ALJ further noted that Dr. Carreras' referred claimant to physical therapy. The sixth factor was addressed when the ALJ noted that claimant was able to perform his previous job "when allowed to alternate positions frequently." (Tr. 20.) The ALJ also noted that after walking claimant required rest periods. (Tr. 19.) At the hearing, the ALJ asked whether sitting, standing, or lying down make the pain better. (Tr. 31.) Claimant responded, "[i]t's all the same." (Id.) Thus, the opinion, in addition to the evidence at the hearing, demonstrates the necessary consideration of the Avery factors.

  B. <u>Assignment of Weight and RFC Finding</u>

Claimant next argues that the ALJ erred in the weight he assigned the medical professionals leading to a faulty RFC finding. As a result, he contends that the testimony of the VE did not accurately reflect all of his relevant limitations, and thus, could not provide substantial evidence to support the ALJ's finding that claimant was not disabled. The ALJ found claimant able to perform sedentary work, except that he needs to alternate between sitting and standing positions approximately every two hours and be given unskilled, simple and repetitive, one-or-two step tasks. (Tr. 18.) Claimant, on the other hand, believes the RFC should have found that he needs to alternate between standing and sitting every fifteen to twenty minutes or that he could lift less than 10 pounds, sit no more than two hours in an eight hour workday with limitations in pushing and pulling. ECF No. 32, at 9–10. Based on those limitations, according to the VE, there would be no job in the local or national economy that claimant could perform. (Tr. 44–45.)

In reaching his RFC determination, the ALJ catalogued the findings of each of the relevant medical sources on the record. The ALJ accepted that "the record reveals scoliosis and a congenital hip deformity, with a visible [sic] shorter right leg (seven inches shorter)." (Tr. 19.) He also acknowledged "that the claimant has a severe limp, secondary to a permanent congenital hip deformity." (Tr. 20.) The ALJ then continued, "[h]owever, the Consultant Orthopedist [Dr. López] reported objective findings, which were inconsistent with the limitations reported by Dr. Berríos …." (Id.)

Claimant maintains that, as his treating physician, Dr. Berríos's opinions should be given greater weight. It is true that generally greater weight is afforded to treating sources because they are likely to have the most "detailed, longitudinal picture" of a claimant's health. Berríos Vélez v. Barnhart, 402 F.Supp.2d 386, 391 (D.P.R. 2005) (citing 20 C.F.R. § 404.1527(d)(2)). To be given such weight, however, the treating physician's opinion must be "'well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the] record.'" Polanco-Quiñones v. Astrue, 477 Fed. App'x, 745, 746 (1st Cir. 2012) (quoting 20 C.F.R. § 404.1527(d)(2)). "The opinion of such a treating physician can be rejected if it is inconsistent with other substantial evidence in the record." Agostini-Cisco v. Comm'r of Soc. Sec., 31 F.Supp.3d 342, 347 (D.P.R. 2014). The ALJ highlighted multiple instances where the findings of Dr. Berríos conflicted with the findings of Consultant Orthopedist, Dr. López. Specifically, although Dr. Berríos opined that claimant was "totally disabled," Dr. López opined that claimant "could perform tasks while siting" and was a "candidate for vocational rehabilitation for the recommended tasks." (Tr. 112, 311.) Dr. López based his opinion on a physical exam, radiological report, and the normal results of a McMurray test, Lachman test, and Aprehension test. (Tr. 19, 110–118.) Dr. Berríos did not refer to any test that led to his opinion and left blank the space designated to indicate laboratory findings. (Tr. 310.) There is a single record of an x-ray consultation referred by Dr. Berríos that found muscle spasm, thoracic

levoscolios, and "chronic dislocation of the right hip with dysplastic changes of the acetabulum and flattened femoral head which appears to be chronic." (Tr. 316.) Additionally, as defendant highlights, Dr. Berríos is a general physical, whereas Dr. López, as an orthopedic surgeon, specialized in claimant's chief complaints. ECF No. 33, at 9.

Where there are inconsistencies between medical sources, it is for the ALJ and not the reviewing court to determine the weight each should be given. See Olmeda v. Astrue, 16 F.Supp.23, 30–31 (D.P.R. 2014). The ALJ here gave good reasons for the weight he afforded the opinion of Dr. Berríos.[4] Based on this weight assessment and in light of the evidence "that claimant has sustained the capacity to perform work activity that does not require walking long distances or standing for a long time," the ALJ found that claimant met the requirements for sedentary work. (Tr. 21.)

At the hearing, the ALJ then asked the VE for employment that exists for an individual with the following description

> A young person[,] consider a vocational profile of light or medium work, semi- and non-skilled, if this person has the following functional limitations: he can't do heavy, medium, or light work, but instead sedentary, simple and repetitive work, non-skilled labor. He alternates between one- or two-step functions that allow him to alternate between sitting and standing positions while he carries out his functions every two hours.

The hypothetical need not reflect each finding of each physician, but rather needs only to "reasonably incorporate the disabilities recognized by the ALJ." Camacho v. Astrue, 978 F. Supp. 2d 116, 122 (D.P.R. 2013). The ALJ gave great weight to the findings of the Dr. López and incorporated the compatible aspects of plaintiff's self-reported limitations in reaching a finding that reflects the infirmities wrought by his back, hip, and leg conditions. In turn, the ALJ sufficiently incorporated these limitations into the hypothetical question that he posed to the VE. The VE testified, and the ALJ adopted

---

[4] Claimant also objects to the ALJ giving great weight to the opinion of non-examining source Dr. Benjamin Cortijo. It is clear from reading the opinion that the ALJ had reviewed Dr. Cortijo's report. Dr. Cortijo's findings, however, are not part of the record before this court. The ALJ devotes only three sentences of his opinion to the findings of Dr. Cortijo and notes that Cortijo himself relied on the records of Dr. López. Based on the records of Dr. López, even without this record, substantial evidence exists to support the ALJ's findings.

in his findings, that claimant could perform work as an eyeglass frame polisher, addresser clerical, or final assembler operator. (Tr. 42–43.) Thus, the ALJ concluded that claimant was not disabled from April 5, 2008 through June 24, 2013.

## V.     CONCLUSION

The ALJ sufficiently addressed the <u>Avery</u> factors. Furthermore, the ALJ showed good reason for discounting the opinion of Dr. Berríos in favor of the opinion of Dr. López which provided substantial evidence to support the RFC finding. The ALJ then sufficiently incorporated this finding into his hypothetical to the VE, which in turn provided substantial evidence that there are jobs in sufficient numbers in the economy that plaintiff can perform. Therefore, the Commissioner's decision is **AFFIRMED**.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 24th of March, 2016.

<u>s/Marcos E. López</u><br>
U.S. Magistrate Judge